UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOSEPH BERRY, 00-A-6515,

    Plaintiff,

    -v-                04-CV-0074(Sr)

LESTER N. WRIGHT, et al.,

    Defendants,

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to the assignment of this case to the undersigned to conduct all proceedings in this case, including the entry of final judgment (Dkt. #24).

## PRELIMINARY STATEMENT

Currently before the Court is the defendants' motion for summary judgment (Dkt. #151).

Plaintiff Joseph Berry ("plaintiff") commenced this *pro se* action pursuant to 42 U.S.C. § 1983 (Dkt. # 1). At all times relevant to the allegations in plaintiff's complaint, plaintiff was incarcerated in the custody of the New York State Department of Correctional Services ("DOCS"). Defendant Lester N. Wright, M.D. ("Wright") , was assigned to DOCS offices in Albany, New York; Anthony DePerio, M.D. ("A. DePerio"), Habib Sheikh, M.D. ("Sheikh"), Robert Takos, M.D. ("Takos"), and Renzo Nylander, D.D.S. ("Nylander"), were assigned to Wyoming Correctional Facility ("Wyoming"); and Jose DePerio, M.D. ("J. DePerio"), and Stephen Laskowski, M.D. ("Laskowski") were assigned to Attica Correctional Facility ("Attica").

Plaintiff's third amended complaint (Dkt. #121) alleges that defendants A. DePerio, J. DePerio, Sheikh, Takos, and Laskowski violated his Eigth Amendment rights when they were deliberately indifferent to his serious medical needs by failing to provide him with adequate and appropriate medical treatment for his diabetes. Compl., ¶¶ 10, 35-36, 40, 47-49, 51. Plaintiff further claims that defendant Nylander violated his Eighth Amendment rights when he was deliberately indifferent to his serious medical needs by failing to provide him with adequate and appropriate treatment for his dental needs. *Id.*, ¶¶ 31-32, 54. Finally, plaintiff asserts that defendants Wright and J. DePerio, failed to adequately supervise their subordinates and/or allowed a policy or custom that permitted various violations of plaintiff's constitutional rights. *Id.*, ¶¶ 18-20, 23-24, 54-55, 65, 67-68. Plaintiff seeks injunctive relief and damages. *Id.*, ¶¶ 69, 75.

For the reasons that follow, defendants' motion for summary judgment is granted.

**FACTS**

During all time periods relevant to this action, plaintiff was a sentenced prisoner in the custody of DOCS. He began serving his sentence in 2000 and was released in 2007. Statement of Facts ("S.O.F."), ¶¶ 1-2 (Dkt. # 152). Prior to entering DOCS custody, plaintiff was diagnosed with diabetes and was prescribed medications Glucophage and Glyburide. S.O.F., ¶¶ 3-4.  Also prior to entering DOCS custody, plaintiff had been diagnosed with temporomandibular joint disorder ("TMJ"). *Id.*, ¶ 5. Plaintiff maintains that his diabetes was stable from the time of his arrest until he was sent to Five Points Correctional Facility ("Five Points").

In September, 2001, plaintiff was transferred to Wyoming, where he

remained until October of 2003. There, he was examined by defendant A. DePerio on October 2, 2001. During his stay at Wyoming, plaintiff was treated by defendants A. DePerio, Sheikh, and Takos. At both Five Points and Wyoming, plaintiff was seen by an endocrinologist for his diabetes. *Id.*, ¶¶ 7-10. Plaintiff was treated by Nylander, a dentist, at Wyoming. *Id.*, ¶ 11.

In December of 2003, plaintiff was transferred to Attica. There, plaintiff was treated by defendant Laskowski and another physician who is not a named defendant in this action. *Id.*, ¶¶ 12-13. Defendant J. DePerio was the Medical Director of Attica. *Id.*, ¶ 14.

During plaintiff's time in DOCS custody, defendant Wright was the Chief Medical Officer of DOCS. Plaintiff wrote to defendant Wright regarding his complaints concerning his medical care, and received correspondence back. Plaintiff did not have personal contact with Wright. *Id.*, ¶ 14.

## DISCUSSION AND ANALYSIS

I. **Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff." *Thomas v. Irvin*, 981 F.Supp. 794, 799 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982. A party seeking to defeat a motion for summary judgment must do more than make broad factual allegations and invoke the appropriate statute. The [party] must also show, by affidavits or as otherwise provided in Rule 56 of the Federal Rules of Civil Procedure, that there are specific factual issues that can only be resolved at trial. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995).

Pursuant to Fed.R.Civ.P. 56(e), affidavits in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Thus, affidavits "must be admissible themselves or must contain evidence that will be presented in an admissible form at trial." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *see also H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991) (hearsay testimony that would not be admissible if

4

testified to at trial may not properly be set forth in an affidavit).

## II. Eighth Amendment Claims

The Eight Amendment's "deliberate indifference" standard consists of both objective and subjective components. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994), *cert. denied*, 513 U.S. 1154 (1995). Under the objective component, the alleged medical need must be "sufficiently serious." *Id.* A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Id.* "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998).

To satisfy the subjective component, plaintiff must show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir.1996). "The subjective element of deliberate indifference 'entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 826 (1994)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003), *cert. denied*, 543 U.S. 1093 (2005) (likening the necessary state of mind to "the equivalent of criminal recklessness"). In order to be found "sufficiently culpable," the official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a

5

substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

"[D]eliberate indifference [will not] be found when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired". *Shire v. Greiner*, No. 02 Civ. 6061(GBD), 2007 WL 840472, * 12 (S.D.N.Y.2007). Instead, plaintiff must establish that defendants "acted with a sufficiently culpable state of mind, i.e., deliberate indifference. Plaintiff must therefore show that prison officials intentionally denied, delayed access to, or intentionally interfered with prescribed treatment". *Tafari v. Stein*, No. 01CV0841, 2009 WL 331378, *6 (W.D.N.Y.2009). "[A]llegations of negligence or malpractice do not constitute deliberate indifference unless the malpractice involved culpable recklessness." *Calloway v. Denane*, No. 07-CV-664 (TJM/DRH), 2009 WL 3064781, *4 (N.D.N.Y.2009).

### A. Defendants A. DePerio, Takos, and Sheikh

Plaintiff first alleges that during his stay at Wyoming, his blood glucose level was persistently poor until his consultation with an endocrinologist, who recommended a treatment plan including daily insulin injections and glucose monitoring. The specialist also recommended follow-up treatments. Compl., ¶¶ 35-40. According to plaintiff, defendants denied plaintiff's follow-up treatments and generally contends that defendants "continu[ed] to administer inadequate medical treatment, causing plaintiff's adverse symptoms to resume." *Id.*, ¶ 40.

The record indicates that, upon his arrival at Wyoming, plaintiff was recognized as a non-insulin dependent diabetic suffering from TMJ pain in his right jaw.

6

A. DePerio examined him five days following his arrival at the facility and ordered an American Diabetes Association diet and medication. A. DePerio Decl.,¶ 7. In the following months, plaintiff was seen regularly and his medication and treatment was modified as appropriate. His blood sugar was monitored, and various complaints were reviewed and addressed. *Id.*, ¶¶ 8-55. Plaintiff was examined at least twenty-seven times by either A. DePerio or his colleagues in the two years he was incarcerated at Wyoming. *Id.*, ¶ 57. Plaintiff was also seen by outside specialists, including an endocrinologist, opthamologist, and dermatologist. *Id.*, ¶¶ 22, 25, 32. Contrary to plaintiff's assertion, the medical records indicate that Takos followed the recommendations of the endocrinologist, and plaintiff received follow-up care. Takos Decl., ¶ 22-28; Ex. A at 85-86, 88-89, 92, 98.

While district courts in this Circuit have held that diabetes is a sufficiently serious medical condition to meet the objective prong, *see Butler v. Smith*, 07-CV-00431, 2008 WL 4186338, at *4 n.6 (N.D.N.Y. Sept. 10, 2008); *Shabazz v. Lee*, 03-CV-1520, 2007 WL 119429, at *6 (N.D.N.Y. Jan. 10, 2007); *Johnson v. Harris*, 479 F.Supp. 333, 337 (S.D.N.Y.1979); *see also Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (recognizing that diabetes is a serious medical condition), plaintiff still does not establish that the defendants acted with a sufficiently culpable state of mind to satisfy the subjective prong of the deliberate indifference standard. The record, which includes plaintiff's own submissions, is clear that the defendants were aware of plaintiff's diabetes and other medical needs, and continuously treated him for those issues. Plaintiff does not allege that the defendants ignored his needs or refused to treat him. While plaintiff may disagree with the

7

decisions made by the defendants in their treatment of him, it is well-settled that an issue of medical judgment is "precisely the sort of issue that cannot form the basis of a deliberate indifference claim." *Hernandez*, 341 F.3d at 147. Plaintiff has not presented any evidence to raise a material issue of fact of negligence, much less deliberate indifference. On this basis, plaintiff's claim is dismissed and the defendants' summary judgment motion is granted.

### B.    Defendant Nylander

Plaintiff next complains that defendant Nylander improperly denied/delayed issuing dentures, filling cavities, performing a root canal, and extracting decayed teeth. Compl., ¶¶ 52- 54.

According to Nylander's declaration, plaintiff was seen by Nylander thirty-one times while he was incarcerated at Wyoming. During those visits plaintiff was treated for a variety of symptoms, including pain, TMJ, decay, and abscessed and bleeding teeth. Nylander Decl., ¶ 42.

Plaintiff contends, however, that upon examination by an oral surgeon in February 2002, it was recommended that upper and lower partial dentures be fabricated for plaintiff. Pl. Statement of Facts, ¶ 11 (Dkt. #162); Compl., Ex. A-18. Three months later, on May 3, 2002, defendant Nylander examined plaintiff and noted that "per DOCS policies, Plaintiff was not eligible for partial dentures at this time." Nylander Decl., ¶¶ 12-13. Plaintiff's next examination with Nylander took place on October 8, 2002, in which Nylander performed an oral examination and submitted an application for partial upper and lower dentures. Plaintiff's dentures were approved by the dental clinic on October 17, 2002. *Id.*, ¶¶ 24-25. The three-month gap between October 17,

when plaintiff was approved for the dentures, and February 18, 2003, when the upper and lower dentures were actually inserted, was attributable to the time Nylander spent making impressions, examining/preparing plaintiff for the procedure, and fitting plaintiff for the dentures. Id., ¶¶ 26-36. It is worth noting that plaintiff failed to appear for his initial appointment at the dental clinic to make impressions for his dentures. Id., ¶ 26; see also Pl. Second Amend. Compl., Ex. A-14 (Dkt. #47).

"Although delay in providing a prisoner with dental treatment, standing alone, does not constitute an [E]ighth [A]mendment violation," Hunt v. Dental Dep't, 865 F.2d 198, 201 (9th Cir.1989), a prisoner can state a claim of deliberate medical indifference under section 1983 if "the delay was deliberate and that it caused [him] to suffer unnecessary and wanton infliction of pain." Hunt, 865 F.2d at 201 (internal quotation omitted). Here, plaintiff's allegation that he was subject to a one-year delay in obtaining his dentures is contradicted by the evidence. The three-month time frame in which he was fitted and prepared for the insertion of his dentures is reasonable, and petitioner has failed to allege a material issue of fact that Nylander was deliberately indifferent to plaintiff's dental needs. Summary judgment is therefore granted to defendant Nylander. See Alster v. Goord, --- F.Supp.2d ----, 2010 WL 3835081 (S.D.N.Y. 2010) (no Eighth Amendment violation where seven-month delay before scheduled oral surgery date was reasonable). Summary judgment is therefore granted to defendant on this ground.

### C. Defendants J. DePerio and Laskowski

Plaintiff's next cause of action alleges that defendants J. DePerio and Laskowski delayed/denied access to necessary medical treatment to improve plaintiff's

9

diabetes, that the defendants were aware of plaintiff's symptoms and that neither took the appropriate action "to abate the serious risk to plaintiff's health" while plaintiff was housed at Attica. Plaintiff specifically complains that medications prescribed by Laskowski were ineffective and that J. DePerio failed to train Laskowski to ensure adequate medical care for the plaintiff. Compl., ¶¶ 47-51. Plaintiff also alleges that an informal policy of "giving low priority to the serious medical needs of chronically ill inmates" existed at Attica, and that Laskowski knew of this informal policy and "acquiesced in its application to the plaintiff." *Id.*, ¶ 48-49.

Laskowski examined plaintiff four times during plaintiff's stay at Attica, during which Laskowski adjusted plaintiff's insulin dosages and continued to monitor plaintiff's blood sugar. Laskowski Decl., ¶ 6; Ex. A at 153-155, 166-167. Plaintiff was also seen by another physician, a podiatrist, and a nurse or physician's assistant on several occasions during the six months plaintiff was housed at Attica. Laskowski Decl., ¶¶ 7-10.

As stated earlier, a plaintiff cannot sustain a claim of deliberate indifference under section 1983 "when an inmate simply prefers an alternative treatment or feels that he did not get the level of medical attention that he desired". *Shire,* 2007 WL 840472 at * 12 (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). The Eighth Amendment does not entitle plaintiff to the treatment of his choice, and Laskowski's care was clearly adequate, even if plaintiff felt that particular medications were less effective than other alternatives. He thus cannot establish that Laskowski was indifferent to plaintiff's chronic diabetes. Moreover, his claim that an "informal policy" of providing inadequate medical care to chronically ill inmates is

unfounded. For that reason, plaintiff's assertion that defendant J. DePerio failed to supervise medical staff regarding treatment for his diabetes as a result of "acquiescing" in an alleged policy that gives low priority to chronically ill inmates also fails.

In sum, plaintiff cannot demonstrate that defendants acted with a sufficiently culpable state of mind to meet the deliberate indifference standard. *See Hathaway*, 37 F.3d at 66. To the contrary, the record contains numerous progress reports and medical records that demonstrate that Plaintiff received medical treatment for his diabetes at Attica. Based on the record evidence, no reasonable trier of fact could conclude that defendants knew of and disregarded a medical condition that presented an excessive risk to plaintiff's health, and summary judgment is granted to the defendants on this ground. *See id.*

### D. Defendant Wright

Finally, plaintiff contends that Wright, as DOCS Chief Medical Officer, failed to adequately supervise his subordinates and/or allowed a policy or custom that permitted violations of plaintiff's Eighth Amendment rights. Compl., ¶¶ 23-24. Defendant Wright argues that he lacks the requisite personal involvement for plaintiff to maintain a section 1983 claim against him. Def. Mem. at 9.

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1948 (May 18, 2009). Thus, it is well settled that the personal involvement of defendants in an alleged constitutional deprivation is a prerequisite to an award of damages under § 1983. *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001); *Colon v.*

*Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Al- Jundi v. Estate of Rockefeller*, 885 F.2d 1060,1065 (2d Cir.1989). Personal involvement may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created or permitted the continuation of a policy or custom under which unconstitutional practices occurred; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating unconstitutional acts were occurring. *Colon*, 58 F.3d at 873.[1]

Plaintiff's complaint alleges that Wright failed to train and supervise the plaintiff's treating physicians, set policy for medical care and violated state requirements, was deliberately indifferent to plaintiff's health services grievances, and encouraged subordinates to follow an informal policy of denying prisoner's adequate medical care. Compl., ¶¶ 6, 18-20, 65, 67-68. Plaintiff's allegations, however, are conclusory statements that find no support in his voluminous submissions to the Court. "Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability." *Webster v. Fischer*, 694

---

[1] At least one district court in this Circuit has opined that the holding in *Iqbal* substantially limited the *Colon* categories. *See Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*'s muster .... The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated."); *but see D'Olimpio v. Crisafi*, Nos. 09 Civ. 7283, 09 Civ. 9952, --- F.Supp.2d ----, 2010 WL 2428128, at *4-*5 (S.D.N.Y. June 15, 2010) ("[T]he five *Colon* categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated.").

F.Supp.2d 163, 179 (N.D.N.Y. 2010) (citing *Pettus v. Morgenthau*, 554 F.3d 293, 300 (2d Cir.2009) ("To the extent that [a] complaint attempts to assert a failure-to-supervise claim ... [that claim is insufficient where] it lacks any hint that [the supervisor] acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights.").

It appears, then, that Wright is being sued on the sole basis of his position within DOCS. There mere fact that a defendant was part of the prison chain of command, without more, is insufficient to maintain a section 1983 claim. *See Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir.1985) (to hold a prison official liable under § 1983 "requires a showing of more than the linkage in the prison chain of command"); *Sash v. United States*, 674 F.Supp.2d 531, 543 (S.D.N.Y.2009) (holding that "[i]t is not enough to show that a defendant 'ultimately supervised those who allegedly violated plaintiff's Constitutional rights.'" (quoting *Mallard v. Menifee*, No. 99 Civ. 0923, 2000 WL 557262, at *3 (S.D.N.Y. May 8, 2000)).

Further, the evidence set forth by the other defendants in this action indicates there was no custom or policy to deny inmates with chronic medical conditions proper care and no proof that plaintiff was provided with inadequate care. The crux of plaintiff's complaint is that he disagreed with the course of medical treatment prescribed by his treating physicians. However, plaintiff cannot prevail on a theory of supervisory liability because he has not alleged an underlying Eighth Amendment violation. It is therefore unnecessary to reach the issue of whether plaintiff's allegations show the requisite personal involvement of Wright. *See Bryant v. Wright*, No. 09 Civ. 2456(GBD)(GWG), 2010 WL 3629443, *10 n.1 (S.D.N.Y. Aug. 31, 2010) (citing *Black*

*v. Coughlin*, 76 F.3d 72, 74 (2d Cir.1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Reddick v. Lantz*, 2010 WL 1286992, at *6 (D.Conn. Mar.29, 2010) ("Absent an underlying constitutional violation, there is no cognizable claim for supervisory liability."); *Dorsey v. Fisher*, No. 9:09-CV-1011 (GLS)(DEP), 2010 WL 2008966, at *12 (N.D.N.Y. May 19, 2010) (citing cases); *D'Angelo-Fenton v. Town of Carmel*, 470 F.Supp.2d 387, 399 (S.D.N.Y.2007)). Summary judgment is therefore granted to defendant Wright on this basis.

## CONCLUSION

For the reasons set forth above, the defendants' motion for summary judgment is hereby granted.

**SO ORDERED.**

DATED: Buffalo, New York
January 24, 2011

    **  H. Kenneth Schroeder, Jr.  **
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**